It's suitably chilly in this courtroom this morning. First case is Adamson versus Cathel. Mr. Taylor. Lon Taylor on behalf of Henry Adamson. Good morning, Your Honors. I would like to reserve two minutes rebuttal. Fine. The New Affirming the impeachment of Henry Adamson with two out-of-court statements by non-testifying co-defendants is contrary to the established U.S. Supreme Court precedent regarding the right to confrontation in an unreasonable application of Tennessee v. Street. As found by the Appellate Division, the primary evidence against Adamson in this multi-defendant, multi-victim robbery case was his purported confession to Detective Cirilli. In contrast to Street, the Appellate Division also acknowledged that Adamson testified that the detective provided, and I'm quoting from the Appellate Division's decision, both the questions and the answers, end of quote, were provided by Detective Cirilli. Now the Appellate Division also said that a criminal defendant is not in a favorable position to argue on appeal that the trial judge failed to give curative instructions when such instruction was not requested by the defendant. I'm reading from the Appellate Division decision. Sure. Why isn't that right? Well, I'm two-fold, not that it's really germane to this Court's decision, but the strange thing from the get-go is in New Jersey, it's very established in New Jersey that plain air, and that was the beef here, there was no objection, no request for that instruction. But that plain air regarding the omission of material instructions, critical instructions, is not harmless beyond a reasonable doubt. So on that... Could you run that by me again? Plain air is not harmless? Regarding material instructions, a vital instruction, whether it's a lesser-included instruction that wasn't given, or in this case, an instruction that is part and parcel of a confrontation, right? And I think that's the important thing to realize here. This is not a mushy due process allegation here. Street makes clear, and it's holding at the end of the case, that it's limiting instruction is required to preserve defendant's confrontation. So this is a sort of sua sponte thing. A judge must always give limiting instructions whenever a co-defendant's confession or statement is being used for impeachment purposes. Certainly. So you say that Street says that absolutely? Well, again, not in so many words, but the instruction, and again, I have to put it this way, in other cases have noted that, that the instruction is part and parcel, not of a due process right, but of this confrontation right. Would you... Oh, I'm sorry. Finish your... No, I... Oh, okay. I didn't mean to interrupt you. Would you agree that under Bruton, where we actually had a clear confrontation cause problem, that we can still review under harmless error? That is... No question about that. All right. Well, why not, why can't we review for harmless error here? You can. Okay. I didn't mean to imply that there wasn't any kind of harmless error analysis required. If this was a, in many cases, where a confrontation or there's, I believe there was a case regarding statements, I think it might have even been brought to this court, bank statements in the normal course of business, that really were not that incriminating, but they were technically, and this is after Crawford, there were technically testimonial statements, and they engaged in a harmless error assessment of that and found it to be harmless, and there was overwhelming evidence. How would you respond to harmless error analysis then? What would be Mr. Adamson's response to an assertion that, well, was there, but it didn't hurt anybody? Well, I never quite understood the evolution of this, but I think it's pretty clear, and I have to be candid with the court, that the harmless error standard in the habeas context is the Brecht standard. And it basically, and it sounds so draconian, but the court in Tucker found that that standard applied in a similar situation, a confrontation clause situation. The Brecht standard is substantial and injurious effect or influence in determining the jury's judgment. I would contend it comes full circle. In New Jersey, there is a plain error standard, and that standard basically is, and it's in rule 2 colon 10 dash 2, clearly capable of producing an unjust result, and I would say it's pretty close. So you need actual, Kodiakos says you need actual prejudice. Is that correct? Yeah, but I think that that has been subsumed by this Brecht standard of finding that it had an influence in determining the jury's verdict. And I think there's a number of other cases I've cited in my briefs that, I believe the Jones case, the Tucker case, cite the Brecht standard. And again, it's a substantial injurious effect or injurious verdict. Is the argument that you make essentially a per se error? In other words, you don't give these limiting instructions, that's error? Implicitly, by my reading of street in itself, and don't mean to be flip about this, I don't care what standard as far as harmless error, even though I think it's an inappropriate standard. Even in the plain error, if that were the standard, you would say you prevail. In a state, acknowledge a plain error standard applies. These different standards, plain error, capable of producing an unjust result. The district court wrongly went down a path of using an even more difficult standard when it comes to instructions that are strictly a violation of due process, which I would call kind of a more of much more of a mushy concept than the confrontation right. And that standard is, it is fundamentally undermines the entire jury process. Even under that standard, which certainly doesn't apply here, but even under that standard, I would contend when you have two, not one, but you have two statements dripping with the defendant's guilt, that he was not able to confront or cross examine in any way. And as indicated by the appellate division, the primary evidence against Adamson was his own confession, which he disavowed. Now that might not be credible, but that's a jury's... He had an opportunity to cross examine the officer whom he claims concocted his confession. But the problem, and this is, it has to be a little bit more of a closer reading of Street. It's clear in Street. See, that doesn't matter. Oh no, it doesn't. It does not really matter because the problem is the officer, the officer in Street was the officer that took not only the defendant's confession, which he claimed was a duplicate of the co-defendant's confession, but the officer also took the co-defendant's confession. And Street makes clear that part of the confrontation right that can be preserved is being able to cross examine at least the officer that took the co-defendant's statement, not his statement, the co-defendant's statement. There's nothing in the record to indicate that that kind of cross examination was unavailable, is there? I mean, if your client had wanted to cross examine the people who had taken co-defendant's statements, there's... Why would we presume that those officers, if they're different than Sorelli, wouldn't have been available to be brought into court and crossed? I think Street makes clear the state's a proponent of this very narrow exception of non-hearsay, and a very narrow exception. Certainly after Crawford, I would contend to this court. It's the state's burden. It's the state's obligation. Once you put improper evidence and you have an improper person, they're impeaching the defendant, not even the officer. You're putting a rabbit in a hat there when you say improper evidence, okay? Let's just ask it this way. You seem to be pressing and saying that in order for this to be legitimate, it has to be tendered while the officer is on the stand. But where do you get that in any case? Isn't it just that they have to be available, that they could be cross examined? But I don't see anything in Street. That's not what happened in Street. What happened in Street was the officer. And the other thing, I'd have a little bit of a beef, and this is a second. When the Supreme Court addresses that, sir, they say this officer was the sheriff, Papandreou or whatever his name is, was available. He was there. He could have been cross examined. It wasn't that he... I guess I'm having a little bit of a difficult time with your assertion that Street only applies if the officer is sitting on the stand. I thought the point that the Supreme Court was making was he could have been cross examined. Not that he could have been cross examined because he was sitting there right then, but that it was within the realm of the perfectly plausible and possible to put him on the stand. I don't want to get hung up on this point, because with all due respect, I think this is kind of a side issue. But once Street outlines a process, and again, a very narrow reason, especially after State's burden to put it forth that kind of evidence, extraordinary evidence, in the proper way, and Street gives a template for that, to have to then have the defendant scour about, I think at some point in the briefs of the District Court, even made some allusion that Street could have gotten the co-defendant's testimony. Once you go down that road, now it's the obligation of the defendant to try and jury rig the proper mechanism of putting on extraordinary evidence that the defendant could not confront, could not cross examine, riddled with his guilt. Now the onus is on the defendant to have to scurry about and do it in a proper way seems to be a little odd. My contention is it's the State's burden. This is non-testimonial exception. Is there any question though that I know Sorelli did not take the co-defendant's statement, I know that, and I'm at a loss, I'd apologize to the Court, I don't know which officer did. Let me ask this on a somewhat separate point, if I might. As a logical matter, if we assume that the plain error standard applied here, and the fact that we only get into this courtroom because there's been a certificate of appealability saying that reasonable jurists could disagree about the outcome, is there a conflict there that creates a problem? I mean, if something is reasonably debatable, is it by definition not plain? Well, I would submit that the COA application is an entirely different thing completely. It's simply a gateway to this Court. I don't think there's any binding or any kind of authority that the COA panel has on this panel, certainly, one way or the other. I don't think that that test all of a sudden morphs onto how this Court should determine this. It's just irrelevant? I would say so. Do you know if in Street there had been a request for limiting instructions and the trial judge, the trial court said, no, I'm not going to do that, or if the Supreme Court was simply viewing a record where it made no difference? Was there a request for a jury, for a limiting instruction in Street in the trial court? I don't believe there was. I think the judge just gave it. I believe. That's my understanding of it. He not only gave it once, he gave it like several times, I think twice before the statements were admitted into evidence. So whether there's a request or not is irrelevant? Well, again, it is relevant from the State Court's perspective, certainly. The State Court, since there was not a request in New Jersey, there is a plain error rule, again, which I think is akin to the Brex standard here. I mean, there's certainly, this Court has an obligation to assess whether this is harmless or not. There's no question about that. Let me ask you about actual prejudice, if I could. I'm sorry. No, go ahead. Back to actual prejudice, what was the actual, what do you assert is the actual prejudice here? Since the prosecutor, or at least reviewing courts thus far have viewed the prosecutor's questioning as impeachment, and there's nothing to indicate an argument that it was used substantively, it was only used as impeachment, what's the actual prejudice? Well, I think the prosecutor did a good job of bringing a large portion of transcript of not only the purported differences, which I submit are pretty minimal, between the defendant's confession, not one, but two other confessions, non-testimonial confessions, out-of-court statements, dripping with the defendant's guilt. And I'm not going to make any kind of contention because of street that somehow you have to completely redact any reference to defendants and minimize that. That's not my contention. But the fact that there was evidence, non-confronted evidence, non-tested evidence, without any limiting instruction, I think the Jones Court, and I think street itself insinuates that jurors are understood to follow instructions, and I'm just quoting from the Jones Court here, and I think this is a key issue, quote, without any sort of instruction to the contrary, it can fairly be assumed that a jury will consider all evidence for its truth. Well, if you subscribe to that, and it's on 601F 2nd at page 800, and I think it certainly makes sense to me, there's no limiting instruction. Everything that's been presented to them, especially with this crazy inconsistent statement instruction, and I think muddy the waters even further. They're going to consider everything. And more than his confession, which he got on the stand and disavowed, take it or not, you know, that's his defense. It's a tough defense. I'm not saying this is a slam dunk for Adamson. That's a difficult defense to say that the cops are lying. But to have these, not one, but two other co-defendants' statements out there riddled with his guilt, that's the primary. The appellate division, to some extent, was really kind of inaccurate. It wasn't just his confession that was the primary evidence against him. It was the co-defendant's. But there was probative value, though, in the comparison of the statements, was there not? Well, I guess from the prosecution's point of view, we can quibble over, and I thought that would probably be the main, that's the district court's focus and the appellate division's focus, is that this was really kind of like the same thing as Street. Again, I would have to say that Street has to be narrowly, Street three times in the decision says that was a coerced imitation, a duplicate. That's not what Adamson, a fair reading of his testimony, was. I sat down, they said they were going to charge my girlfriend, and I just went with the flow. And the appellate division itself found... That's exactly how it came out, isn't it? I mean, your client went back and forth at certain points. He said Cerelli was making it up on his own. At certain points, he said he read it and was just going along with the flow. I mean, there's some back and forth. Is there some equivocation? I would agree with you, Your Honor. But overall, I'd say this is a far field from Street's coerced imitation. They told me to say, read the statement, they told me to say what's in the statement, and that's what I did. That's not this case. But there are reasons, it would seem to me, for the prosecution to want to point out the differences between Street and this case, in the way that the testimony... Without getting into my personal opinion of the Street decision in itself and the United States Supreme Court, certainly. But it should be very narrowly construed. I wonder if, about this idea of a per se rule, if you don't give the limiting instructions, that's reversible error. Hypothetically speaking, supposing Adamson had been identified at the scene, and that evidence was presented in addition to the three confessions, would you have reversible error, if there's no limiting instruction? I know it's hypothetical. No, that's a good, that's more of a due process kind of wrinkle to it. I don't think it says, I'm going out here on a limb... This is an easier case because all you have is three confessions. Well, right. I guess the difference between, well, the bank statements in one of the cases, and forgive me, I think it's Trolla, I think this court's decision, that type of thing. Or some sort of innocuous, anonymous, he was on the scene. Now, that's bad. It's certainly bad to have two statements by non-testifying co-defendants saying that not only the defendant was guilty, but he planned the whole thing. Nothing like that. I think, and I understand, and I'm sympathetic given the complexities in this area, as far as the judge having to sue a sponte, given instruction, but with all due respect, that's his job. This is nothing secret. This is not some tangential, weird, due process type of evidence that came in that shouldn't have, that's somewhat prejudicial. This is damning evidence. This is a red flag. You've got to say something at some point, it seems to me. We understand your position. Any other questions? We'll have you back on rebuttal. Thank you. Thank you. Mr. Brown? Stephen E. Brown, Chief Assistant Prosecutor representing the state of New Jersey. The state would submit that the prosecution in this case did not commit any errors, and that because the defense counsel didn't ask for the limiting instruction, the issue was waived. Regarding the use of the co-defendant's confessions, we submit that this is explicitly allowed via Tennessee v. Street. Go to the point, right to the heart of your colleague's argument, which is there was no limiting instruction. How do you get around in Street the repeated emphasis, repeated emphasis by the court, on the importance of the limiting instruction? Well, I would submit that, on behalf of the state, that plain error is a rule that's common to the state courts in New Jersey and also the federal courts. One can waive instruction. Unfortunately, I can't read defense counsel's mind, but the fact of the matter is perhaps he didn't want an instruction regarding this issue because a lot of evidence came in regarding the defendant, and although it's not substantive, maybe he didn't want the jury to hear this all over again. I don't want to get pulled into Strickland and whether that's competent or not. I'm trying to get you to address the point that I understand your opponent to be making, which is that Tennessee v. Street has certain parameters. One of those parameters is you only avoid the expressly told, pointedly told, you may not look at these co-defendant statements for the truth of the matter asserted. You may not do that, and that in the absence of that kind of an instruction, they will look at it for the truth, and that does clearly, plainly implicate a confrontation clause problem. That's the question that I'd be very interested to hear you answer. Well, we would submit that there was no danger of confusion to the jury as evidenced by the fact that the defendant, Mr. Adamson, was acquitted of the most serious charge, attempted murder. I'm not sure. Let me ask it this way. Do you have any case, other than the one that's before us right now, any case at all that you can point to where Tennessee v. Street was applied and co-defendant statements were admitted where there wasn't a limiting instruction? No, sir. I can't cite anything offhand. Is it the mistake on the part of the trial judge? I mean, doesn't Street place the onus on the judge, him or herself, to give limiting instructions in those circumstances where confessions are being used for impeachment purposes? Not on counsel, not on the question of an objection to it, whether it's admissible or properly used, but it's a direction to the trial judge. Why isn't that a correct take on Street? I think because then you're really taking the power of the defense attorney away for, to conduct his own strategy. I've seen cases where defense may not want instruction. They may not want to rehash certain matters. Maybe defense felt there was a danger of confusing the proper purpose. Do you mean it's possible that defense counsel wouldn't want limiting instructions on the use of a co-defendant's confession? I think it's possible. The appellate division felt that it should have been given, but it's possible. Again, I can't... What would be the upside? Why would a defense counsel ever say, you know what, I really don't want the judge to tell this jury not to listen to these co-defendant statements, which are implicating me in the crime. I don't want a limitation on that. Wouldn't that just be almost on its face ineffective assistance? No sir, I don't. Because again, maybe you didn't want it rehashed and the prosecutor in summation really expressed very carefully the state's position that these statements were to be used only for the purposes of determining credibility of the defendant regarding his confession, not for any other purpose. There's not a word in the summation that could possibly confuse the jury. And again, I think the lack of confusion by the jury is shown by the fact they acquitted the most serious charge in the indictment. Well, let's assume that that argument doesn't carry the day. I thought your position was that we had harmless error in this case. Yes. And could you give us the reasons why you think that there is harmless error here? Because I think it was clear, again, that from the state's questioning, from the state's summation, that credibility of the defendant regarding his confession was the only issue. That there was never any attempt by the state to try and tie this evidence of the other statements as substantive evidence. It just didn't happen. Really the only question is should the jury instruction have been given under these circumstances and I don't think... But it was, I'm sorry, it was harmless error because why? There was so much other evidence pointing to his guilt? What was the other evidence? We only had the defendant's confession really. That was your case? Yes. Because the defense attorney even admitted that. When you say to assess his credibility and didn't believe him. Is that basically what you're saying? They didn't believe his confession, exactly. In other words, not for substantive. We're not talking about... Well, they believed his confession. His confession was that he was there and he did it and he participated. They didn't believe his recanting is what you mean, right? They didn't believe his recanting. They believed the statement that he had written. They believed his testimony. But that was your whole case in addition to the other confessions that were used to impeach Adamson. Is that right? Well, the other confessions, when you say it's the whole case, it wasn't our whole case in substantive purpose. It was purely impeachment of Adamson who had given a statement confessing to the crime and then at trial gave the convoluted excuse of Sorelli having written the whole confession and then Sorelli having Adamson look at the confessions of other defendants. I was trying to get you back to Judge Serga's question about harmless error. I guess when you say harmless, the error was harmless. That was because the jury had the opportunity to assess his credibility and didn't believe his testimony. Is that it? There was no other evidence. No one on the scene identified him. There was no physical evidence. It was all purely credibility. The jury didn't believe him and you say therefore harmless error. There was no dispute as to the facts. The entire defense was it all happened but my client wasn't involved. Can I ask you, you said the prosecutor said things in his amount of, well I'm now putting words in your mouth, but I take you to be saying that the prosecutor did the job perhaps that the judge should have and said, hey only look at this as a credibility point. What language are you thinking of or pointing to specifically in the appendix for that assertion? I can't specifically point out. It was just a general flow, general statement to the jury that this man's confession, original confession is believable and his trial testimony is not based upon the fact he was impeached. All right. The prosecutor's closing statements on this point, when he referenced or she referenced the impeachment, am I correct that the focus was entirely on the impeachment part of this or was it also on the substantive part that is? It was both substantive in the sense that regarding the confession and the testimony of the defendant. In other words, the defendant testified and I think that could be used substantively as far as contrasting it with his original statement but she did not use the co-defendant statements for substantive purposes or solely for impeachment. The trial judge gave a prior inconsistent statement charge to the jury which essentially said if you don't believe the current testimony, you can believe the prior statement which was, I gather, his first confession. Is that correct? It was regarding witnesses. Again, the two... Regarding witnesses. So, in other words, you don't believe current testimony, you can believe prior statements, meaning the statements of Napier and Algemar. No, the statement of Adamson. Okay. I'm sorry. Well, I was going to ask you, don't you think that prejudicially unfairly drew the jury's attention to the prior statements, which is exactly what Mr. Taylor is saying shouldn't have occurred? No, because if I remember correctly, the language that the judge used in the instruction referred to witnesses. Neither Napier nor Algemar were witnesses in the case. How probative was the evidence that Adamson's girlfriend's car was at the scene of the crime? It's probative in the sense that it shows perhaps a connection between the crime and his girlfriend's car being used during the commission of that crime. In other words, it's circumstantial evidence, but it's still evidence. And it may not... I guess it depends on how the jury would weigh that evidence, because obviously cars can be used for purposes unknown to the owner. The street case emphatically holds, and it's a statement, it's the second to the last sentence of the opinion, we hold that the trial judge's instructions were the appropriate way to limit the jury's use of the evidence consistent with the Constitution. It's pretty strong language. Doesn't that suggest to you that it's the obligation of a trial judge in each of these types of cases to limit the use of prior confessions, or confessions that are used for impeachment purposes? We would argue no. Again, waiving of a jury instruction is not an unusual procedure in the federal courts, and we submit that the trial judge did not do anything that was in contradiction to established Supreme Court authority, and he certainly didn't apply the facts in a proper way. We feel that the defense really did not make an argument here regarding any constitutional error by the trial judge. Is your argument that there was no error, but if you find that there was error, it was harmless? Yes. In other words, we would say there's no error, but if the court were to disagree with the state's position, yes, it was harmless. I have nothing else on this court. Any other questions? Good. Thank you, Mr. Braun. You're very welcome. Mr. Taylor? I decided to waive rebuttal unless there's any questions. Good. Any questions?